UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JIMMY H. MOYERS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-15727** |
| **KEITH COOLEY, WARDEN** | **SECTION "F"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

### I.    Factual and Procedural Background

The petitioner, Jimmy H. Moyers ("Moyers"), is a convicted inmate incarcerated in the B.B. "Sixty" Rayburn Correctional Center in Angie, Louisiana.[2] On December 5,, 2013, Moyers was charged by Bill of Information in St. Tammany Parish with one count of theft of property belonging to Home Depot and valued at $500 or more but less than $1,500.[3]

The record reflects that, on October 10, 2013, Christopher Lowe, a loss prevention officer with Home Depot, investigated the report by a sales associate that a man, later identified as

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 10.

[3]St. Rec. Vol. 1 of 2, Bill of Information, 12/5/13 (as amended 12/13/13).

Moyers, ran out of the store with a basket full of products.[4] The sales associate told Lowe that she tried to call the man back to check his receipt, but the man kept running. Two customers provided a partial license plate number of the man's white Dodge pickup truck. A sales associate in the hardware department reported that the same man asked for two nail guns, two compressors, and three boxes of nails.

The video surveillance tape showed Moyers load four items into the truck with the help of a female passenger who exited from the passenger side of the truck. The video and an inventory of the store determined the four items to be a welder valued at $269.00, an air compressor valued at $159.00, and two boxes of framing nails valued at $79.63 each. Lowe was unable to read the labels on the nail boxes, but after he conducted an "on hand" count and compared the results to the store's inventory, he was able to determine the specific boxes of nails which were stolen.

Based on the information received from Lowe and the other witnesses, Deputy Bubba Stipe and Sergeant Alex Dantagnan of the St. Tammany Parish Sheriff's Office were able to locate Moyers's complete license plate and the associated home address. The deputies visited the residence and obtained Moyers's cell phone number from his mother. Deputy Stipe spoke with Moyers by phone, and arranged a meeting at which Moyers failed to appear.

The follow-up investigation was conducted by Detective Jeffrey Roberts, who eventually located Moyers's at the address on his driver's license. After being read the *Miranda* warnings and placed under arrest, Moyers's eventually led Detective Roberts to the house where the compressor was stored in its unopened box. Moyers also informed Detective Roberts that he pawned the welding machine at Cash America Pawn. Moyers stated that his intent was to obtain

---

[4]The facts were taken from the published opinion of the Louisiana First Circuit Court of Appeal on direct appeal. *State v. Moyers*, 167 So.3d 740, 742-44 (La. App. 1st Cir. 2014); St. Rec. Suppl. Vol. 1 of 2, 1st Cir. Opinion, 2014-KA-0673, pp. 2-6, 11/7/14.

nail guns from the Home Depot sales associate, but because of store policy, he was not allowed to have custody of them so he was unable to take them out of the store. He also indicated that he obtained the welding machine, two packs of "grip tight nails," and an air compressor. His plan was for another person to return the stolen items back to Home Depot for a store credit and then purchase additional tools with the credit. Detective Roberts retrieved and returned the air compressor and welding machine to Home Depot but never located the missing boxes of nails.

Moyers was tried before a jury on February 4, 2014, and found guilty as charged.[5] At a hearing held on February 20, 2014, the Trial Court denied Moyers's motions for post-verdict judgment of acquittal and for a new trial.[6] The Court also sentenced Moyers's to serve five years in prison.[7] The court later denied Moyers's motion to reconsider the sentence.[8]

Moyers also entered a plea of not guilty to the State's multiple offender bill.[9] On April 3, 2014, the Trial Court adjudicated Moyers to be a fourth felony offender, vacated the original sentence, and sentenced Moyers as a multiple offender to 20 years in prison without benefit of probation or suspension of sentence.[10] The Court denied Moyers's motion to reconsider the sentence.[11]

---

[5] St. Rec. Vol. 1 of 2, Trial Minutes, 2/4/14; Jury Verdict, 2/4/14; St. Rec. Vol. 2 of 2, Trial Transcript, 2/4/14.

[6] St. Rec. Vol. 1 of 2, Sentencing Minutes, 2/20/14; Motion for Post-Verdict Judgment of Acquittal, 2/18/14; Motion for New Trial, 2/18/14; St. Rec. Vol. 2 of 2, Sentencing Transcript, 2/20/14.

[7] St. Rec. Vol. 1 of 2, Sentencing Minutes, 2/20/14; St. Rec. Vol. 2 of 2, Sentencing Transcript, 2/20/14.

[8] St. Rec. Vol. 1 of 2, Motion to Reconsider Sentence, 2/21/14; Trial Court Order, 2/26/14.

[9] St. Rec. Vol. 1 of 2, Sentencing Minutes, 2/20/14; Multiple Bill, 2/20/14; St. Rec. Vol. 2 of 2, Sentencing Transcript, 2/20/14.

[10] St. Rec. Vol. 1 of 2, Multiple Bill Hearing Minutes, 4/3/14; St. Rec. Vol. 2 of 2, Multiple Bill Hearing Transcript, 2/20/14.

[11] St. Rec. Suppl. Vol. 1 of 2, Trial Court Order, 4/22/14; Motion to Reconsider Sentence, 4/14/14.

On direct appeal to the Louisiana First Circuit Court of Appeal, Moyers's appointed counsel asserted that the evidence was insufficient to support the verdict and the Trial Court erred by denying the motion for post-verdict judgment of acquittal based on the lack of evidence to prove the theft was over $500.[12]  On November 7, 2014, the Louisiana First Circuit affirmed Moyers's conviction, habitual offender adjudication and enhanced sentence finding no merit in the claims raised.[13]

The Louisiana Supreme Court denied Moyers's related writ application without stated reasons on October 9, 2015.[14]  Moyers's conviction was final under federal law ninety (90) days later, on January 7, 2016, when he did not file a writ application with the United States Supreme Court.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (time for filing for certiorari with the United States Supreme Court is included in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup. Ct. Rule 13(1).

## II. Federal Habeas Petition

On September 9, 2016, the clerk of the United States District Court for the Western District of Louisiana filed Moyers's petition for federal habeas corpus relief in which he argues that the evidence was insufficient to support the verdict and the state trial court should have granted the motion for post-verdict judgment of acquittal.[15]  After the case was transferred to this Court, the

---

[12] St. Rec. Suppl. Vol. 1 of 2, Appeal Brief, 2014-KA-0673, 6/3/14.

[13] *Moyers*, 167 So.3d at 740; St. Rec. Suppl. Vol. 1 of 2, 1st Cir. Opinion, 2014-KA-0673, 11/7/14.  The Court denied Moyers's request to file a supplemental pro se brief.  St. Rec. Supp. Vol. 1 of 2, 1st Cir. Order, 2014-KA-0673, 8/20/14; Motion to File, 8/12/14.

[14] *State ex rel. Moyers v. State*, 178 So.3d 999 (La. 2015); St. Rec. Suppl. Vol. 2 of 2, La. S. Ct. Order, 2014-KH-2600, 10/9/15; La. S. Ct. Writ Application, 14-KH-2600, 12/12/14 (dated 12/5/14); St. Rec. Suppl. Vol. 1 of 2, La. S. Ct. Letter, 2014-KH-2600, 12/12/14.

[15] Rec. Doc. No. 1.

State filed a response in opposition to the petition conceding that Moyers's petition was timely filed and state court review was exhausted.[16] The State argues that Moyers's claims are without merit and do not entitle him to federal habeas relief.

### III.    General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[17] applies to this petition, which is deemed filed in this Court under the federal mailbox rule on September 6, 2016.[18] The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and the claims must not be in "procedural default." *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes and the record shows that Moyers's federal petition was timely, state court review was exhausted, and his claim is not in procedural default. For the reasons that follow, Moyers's is not entitled federal habeas relief.

---

[16]Rec. Doc. No. 9.

[17]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[18]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of the Western District docketed Moyers's petition on September 9, 2016, and it was deemed filed with this Court on November 14, 2016, when the filing fee was received. Moyers dated his signature on the form petition on September 6, 2016, which is the earliest date appearing in the record on which he could have presented the pleadings to prison officials for mailing to a federal court. The fact that he later paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. See *Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002) (mailbox rule applies even if the filing fee is not paid at time of mailing) (citing *Spotville*, 149 F.3d at 376).

## IV. Standards of a Merits Review

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the Court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485. The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, __ U.S. __, 134 S. Ct. 1697, 1706-07 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" *White*, 134 S. Ct. at 1706 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it correctly identifies the governing rule but then applies it unreasonably to the facts. *White*, 134 S. Ct. at 1706-07; *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *See Williams*, 529 U.S. at 410. The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *Id.* "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## V. **Sufficiency of the Evidence**

Moyers alleges that the State failed to prove his guilt because there was insufficient evidence to establish the value of the two boxes of nails he took from the store. He claims, as a result, the state trial court erred in denying his Motion for Post-Verdict Judgment of Acquittal based on that same argument. The State contends that it was reasonable for the state courts to deny relief on this claim.

Moyers asserted this claim on direct appeal arguing that the State failed to prove the value of the actual boxes of nails he took since the boxes were never recovered. Relying on *Jackson v. Virginia*, 443 U.S. 307 (1979) and related state case law, the Louisiana First Circuit held that, based on the inventory and pricing evidence submitted, it was reasonable and not irrational for the jury to conclude that the missing boxes were the ones taken by Moyers and that the price of those missing boxes together with the value of the other stolen items was more than $500. This was the last reasoned state court opinion on the claim. *See Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

As an initial matter, Moyers's argument that the state trial court erred when it denied his Motion for Post-Verdict Judgment of Acquittal does not involve consideration of any questions of federal or constitutional law, and review of such claims is not proper on habeas review. *Haygood v. Quarterman*, 239 F. App'x 39, 42 (5th Cir. 2007) (citing *Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir. 1991)) (state court's denial of a motion for a new trial does not necessarily constitute a violation of a federal constitutional right). A federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding," and instead is limited to review of questions of

federal constitutional dimensions. *See Wilkerson v. Whitley*, 16 F.3d 64, 67 (5th Cir. 1994); *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (federal habeas review does not lie for errors of state law). The Court will proceed to address the claim as one of sufficiency of the evidence.

Claims of insufficient evidence present a mixed question of law and fact. *Davila v. Davis*, No. 15-70013, 2016 WL 3171870, at *3 (5th Cir. May 26, 2016); *Maes v. Thomas*, 46 F.3d 979, 988 (10th Cir. 1995). The Court must therefore give deference to the state court's findings unless the decision was contrary to, or involved an unreasonable application of Supreme Court law. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

The appropriate standard for determining the sufficiency of evidence is that set forth in *Jackson*, relied on by the state appellate court, which requires a court to determine whether, after viewing the record and the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008); *Williams v. Cain*, 408 F. App'x 817, 821 (5th Cir. 2011). Louisiana law allows for a crime to be proven by both direct and circumstantial evidence.

In Louisiana, "[t]he rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. Rev. Stat. Ann. § 15:438. However, on federal habeas corpus review, the court does not apply this state law, "reasonable hypothesis" standard, and instead must apply the *Jackson* and AEDPA standards of review. *Gilley v. Collins*, 968 F.2d 465, 467 (5th Cir. 1992) (citing *Schrader v. Whitley*, 904 F.2d 282, 284 (5th Cir. 1990)). To the extent petitioner relies on Louisiana's circumstantial evidence rule itself, "[t]his is not a purely separate test from the *Jackson* standard to be applied instead of a sufficiency of the evidence test . . . . Ultimately, all evidence,

9

both direct and circumstantial, must be sufficient under *Jackson* to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt." *State v. Porretto*, 468 So.2d 1142, 1146 (La. 1985); *accord State v. Williams*, 693 So.2d 204, 209 (La. App. 4th Cir. 1997). The reasonable hypothesis standard under state law is "just an evidentiary guide for the jury. If a rational trier of fact reasonably rejects the defendant's hypothesis of innocence, that hypothesis fails." *State v. Maxie*, 614 So.2d 1318, 1321 (La. App. 3d Cir. 1993); *accord Williams*, 693 So.2d at 209. The appropriate standard for this Court on habeas review remains *Jackson*.

The Court's consideration of the sufficiency of the evidence extends only to what was presented at trial. *See McDaniel v. Brown*, 558 U.S. 120, 131, 134 (2010) (recognizing that a reviewing court is to consider all of the trial evidence as a whole under *Jackson*); *Johnson v. Cain*, 347 F. App'x 89, 91 (5th Cir. 2009) (quoting *Jackson*, 443 U.S. at 324) (*Jackson* standard relies "upon the record evidence adduced at the trial."). The review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury. *United States v. Young*, 107 F. App'x 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993)); *see also Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"). A reviewing federal habeas court, therefore, is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses for that of the fact-finder. *Weeks v. Scott*, 55 F.3d 1059, 1062 (1995) (citing *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985)). All credibility choices and conflicting inferences must be resolved in favor of the verdict. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

In addition, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'" *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera v. Collins*, 506 U.S. 390, 402 (1993)). Thus, to determine whether the commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law. *Perez*, 529 F.3d at 594 (citing *Jackson*, 443 U.S. at 324 n.16).

In 2013, when Moyers committed the theft from Home Depot, La. Rev. Stat. Ann. § 14:67 defined theft in relevant part as the intentional "misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations." The intent of the defendant could be inferred by the factfinder from the circumstances of the case and the actions of the defendant. *State v. Johnson*, 747 So.2d 61, 65 (La. App. 2d Cir. 1999) (citing *State v. Sepulvado*, 672 So.2d 158 (La. 1996)).

In addition, the value of the items taken determined the sentence exposure for the defendant. La. Rev. Stat. Ann. § 14:67. The testimony of the owner is sufficient to establish the value of the stolen property if it is clear and not contradicted. *State v. Stack*, 710 So.2d 841, 844 (La. App. 5th Cir. 1998). In addition, "[u]nless it is shown that the owner lacks knowledge of the value of a movable, his or her testimony as to value is generally admissible, with its weight being left to the jury." *Johnson*, 747 So.2d at 65 (citing *State v. Dilworth*, 358 So.2d 1254 (La. 1978) & *State v. Curtis*, 319 So.2d 434 (La. 1975)).

Thus, at the time, to prove the felony theft charged against Moyers, the State was required to present proof that Moyers took property belonging to Home Depot with intent to deprive Home Depot of that property and which property was valued at $500 or more but less than $1,500.

*Johnson*, 747 So.2d at 65; *State v. Allen*, No. 2013-KA-1149, 2014 WL 1514591, at *4-*5 (La. App. 4th Cir. Apr. 16, 2014).

As an initial matter, Moyers does not contest that he intentionally took with the intent to deprive Home Depot of four items, a welder valued at $269.00, an air compressor valued at $159.00, and two boxes of nails. His challenge to the sufficiency of the evidence is to the identification and valuation of the two boxes of nails, which were identified at trial as two boxes of framing nails valued at $79.63 per box. The jury heard the testimony of Dale Lowe who reviewed the video surveillance tape to reconcile what the man asked the sales associate to get for him and to confirm what had been stolen.[19] The sales associate who helped Moyers indicated that Moyers asked for two nail guns, two compressors, and three boxes of nails. Pursuant to store policy, the associate retrieved the nail guns and placed them on a register counter and placed the other items in a buggy for Moyers to purchase.[20] A training receipt was created from an inventory made of the store's merchandise. The receipt reflected the identity and value of the items that were initially placed by the sales associate at the register and in the buggy for Moyers: a strip nailer valued at $289; a framing nailer valued at $229; a compressor nailer combo kit valued at $159; a nailer kit valued at $159; and three boxes of galvanized ring round plastic roofing nails at valued at $79.63 per box.[21]

The testimony and video surveillance played for the jury showed that the buggy Moyers took out of the store contained only four items.[22] Those items were identified as a $269 Lincoln

---

[19] St. Rec. Vol. 2 of 2, Trial Transcript, p. 189, 2/4/14.

[20] *Id.*, at pp. 189, 242-43.

[21] *Id.*, at p. 191.

[22] *Id.*, at pp. 197, 199.

12

welder, a $159 quarter cable combo kit air compressor, and two boxes of framing nails valued at $79.63 each.[23] The police retrieved the welder and compressor and returned them to Home Depot.[24] Moyers told police that someone tried to return them for him to a Home Depot, but the nails were never recovered.[25] Lowe determined the type of nails that were taken by Moyers based on the information from the sales associate, the video, and a hand count of the inventory which revealed the only two boxes of nails missing from the store.[26]

The jury therefore had before it evidence to establish that Moyers theft included two boxes of nails that could not specifically be identified from the video and were not located after the theft. The evidence showed, however, that the store personnel immediately made a list of the particular items that had been placed in Moyers buggy by the sales associate, which included the roofing nails identified at trial. The inventory conducted immediately after the theft revealed that two boxes of nails were missing which were the type of nails identified at trial and which had been placed in Moyers buggy. The testimony established that these specific roofing nails sold for $79.63 per box and Moyers admitted to police that he took two boxes.

The jury apparently found the testimony and evidence of the type and value of the nails to have been credible, something that was within its authority and is not to be second guessed by this court. *Weeks*, 55 F.3d at 1062. The record therefore establishes that the jury had more than sufficient evidence before it to reasonably conclude that Moyers intentionally took from Home

---

[23]*Id*., at pp. 200-01, 205.

[24]*Id*., at pp. 220-22, 228, 230, 237-38.

[25]*Id*., at pp. 228-29, 230.

[26]*Id*., at pp. 203, 240-41.

13

Depot a $269 welder, a $159 compressor kit, and two boxes of nails at $79.63, totaling in value $587.26, which is more than $500 and less than $1500.

Moyers has failed to establish that there was insufficient evidence under the *Jackson* standard to support the guilty verdict. The state courts' denial of relief on this claim was not contrary to, or an unreasonable application of, Supreme Court law. Moyers is not entitled to relief on these claim.

## VI.     Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Jimmy H. Moyers's petition for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[27]

New Orleans, Louisiana, this 20th day of July, 2017.

_____
**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[27]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.